Charles W. STALL, Jr., Appellant,

v.

John E. BOURNE, Jr., and Ross F. Walker, Appellees.

No. 84–1394.

United States Court of Appeals, Fourth Circuit.

Submitted Oct. 25, 1984.

Decided Oct. 11, 1985.

Robert N. Rosen, Rosen, Oberman & Rosen, Samuel H. Altman, Altman & Altman, P.A., Charleston, S.C., on brief, for appellant.

James E. Gonzales, Gonzales & Gonzales, North Charleston, S.C., on brief, for appellees.

Before HALL and MURNAGHAN, Circuit Judges, and MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation.

PER CURIAM.

Appellant, Charles W. Stall, seeks to reverse an order of the district court granting defendants summary judgment on grounds of issue preclusion. Stall's complaint in district court alleged that he had been discharged from employment due to his exercise of First Amendment rights. The district court concluded that Stall could not prevail on his constitutional claim because Stall had initiated a prior unemployment benefits action which was entitled to preclusive effect. That action had resulted in a determination that Stall's discharge was for work-related misconduct, though not misconduct of sufficient severity to deprive Stall of unemployment benefits. The district court precluded Stall from relitigating the reason for his discharge, and ruled that defendants were entitled to summary judgment on Stall's constitutional claim.

■ We affirm the order of summary judgment because the district court properly determined the issue preclusive effect of Stall's unemployment benefits action. Since our review of the district court's order requires an understanding of the proceedings in Stall's unemployment benefits action, we set out the history of that action in some detail.

Stall's unemployment benefits action and his constitutional claim stemmed from his discharge from employment with the city of North Charleston, South Carolina. The Buildings and Grounds department of the City of North Charleston had employed Stall for some time. The employer asserted that sometime before March 1, 1982, Stall had indicated an intention to resign on or about March 1, 1982. The employer, acting on that information, asked Stall to state the date of his resignation, seeking such information for the department's planning purposes. Stall's memorandum response was that, because certain educational courses he sought were not then available, and for financial reasons, he was not then asking for a "leave of absence". (Joint Appendix (App.) p. 84). The employer advised Stall by memorandum that the Stall response was "not satisfactory". (App. p. 85). Several weeks later, Stall's supervisor reviewed in a memorandum to Stall the employer's contention; he concluded, "It is impossible to maintain a functional organization with a state of uncertainty.... I will not allow you to give and rescind notice of resignation. Therefore, I am advising you that your last day of employment with the City of North Charleston will be March 1, 1982." (App. p. 86). Stall denied that he had ever stated an intention to resign.

During the period leading up to March 1, 1982, and apparently thereafter, Stall had been a member of the North Charleston School Board. In what appears to have been a spirited manner, an election contest for Chairman had developed on the School Board. Stall asserted that the Mayor of North Charleston had talked with him in early January, 1982, in the Mayor's office and at lunch in an effort, among other things, to persuade Stall to vote for the

Mayor's candidate for Chairman, one Altman. When Stall demurred, the Mayor made reference to his belief that Stall's employment and School Board performance could reflect adversely on North Charleston. Stall asserted a feeling of intimidation, and a fear for his job, flowing from the Mayor's comments and Stall's reluctance to follow the Mayor's wishes as to Mr. Altman.

Thus was the stage set for the various proceedings which followed. At about the time of the filing of his constitutional claim in district court, Stall also initiated an unemployment benefits action with the South Carolina Employment Security Commission [the Commission]. In the informal claim filed by Stall with the Commission, his claims for relief were twofold in nature; he asserted that he was discharged without any proper cause, and he further asserted that "I feel I was terminated for political reasons". (App. p. 21). This material was contained in a "fact-finding report" of February 28, 1982, filed with the Commission. (App. p. 20, 21). In the complaint filed almost at the same time in the United States District Court for the State of South Carolina, Charleston Division, the claim for relief is predicated entirely on an assertion that Stall's termination was in violation of Amendments One and Fourteen of the Constitution of the United States. In both proceedings, then, Stall advanced his constitutional claims; in the unemployment benefits proceeding he joined with that constitutional claim a denial of the employer's stated reasons for his discharge.

Nonetheless, the central issue in the proceedings before the district court and before the Commission was, and had to be, the same: what was the reason for Stall's discharge? If the reason for discharge was, for example, for a sufficiently severe failure to perform the duties of the employment, then obviously Stall could not prevail in either forum. On the other hand, if the Commission should have found that the discharge was not based on, for example,

improper performance of duty, or other similar grounds, then Stall could prevail before that Commission, either because the asserted grounds for discharge were legally insufficient, or because his First Amendment rights had been violated by the discharge, or for both reasons. For emphasis, the issue before both the Commission and the District Court is restated: what was the reason for Stall's discharge? Certain it is, however, that from the second paper shown (UCB Form 102) in the Joint Appendix Stall raised the issue of his First Amendment rights in the Commission proceedings in his statement there that "I feel I was terminated for political reasons". (App. p. 21).

While the record does not reveal the nature or extent of the first level of proceedings on the unemployment benefits claim, before a "Claims Adjudicator", that official filed a "Determination by Claims Adjudicator on Claim for Benefits" (App. p. 22), where she states her decision. The Claims Adjudicator determined that Stall had not been discharged, but in fact had voluntarily left his job with the city. It is clear from the report of the Claims Adjudicator that she did consider in her ruling on the claim for benefits of March 18, 1982, the arguments advanced by Stall concerning his First Amendment rights. The Claims Adjudicator writes, "He states he felt he was terminated for political reasons. After careful consideration ...", the Adjudicator found that Stall had voluntarily quit his employment. (App. p. 22). Only by ignoring such language as that quoted can we conclude that the Claims Adjudicator did not consider the First Amendment rights advanced by Stall. Because of her conclusion as to voluntarily quitting, the Claims Adjudicator in the initial determination decided that Stall was not eligible for unemployment benefits.

Stall appealed the Adjudicator's initial decision, which led to a full evidentiary hearing before the Commission's Appeals Referee [1]. Both Stall and the employer

---

1. Throughout the record, the official is referred to as the "Appeals Referee," though the regulations governing the Commission state that the appeal is to be taken to the "Appeal Tribunal".

were represented by counsel in the hearing before the Commission's Appeals Referee. Each presented extensive evidence concerning the reasons for Stall's discharge. That evidence appears to have included a copy of Stall's district court complaint,[2] and substantial testimony by Stall to the effect that his discharge had resulted from his refusal to support the city mayor's candidate for the North Charleston School Board position. Even a cursory reading of the transcript of the hearing before the Appeals Referee shows clearly that Stall chose to attack his discharge on two bases. First, he asserted vigorously that the assigned reason for his discharge was in fact not the true reason, in that he denied having ever indicated that he intended definitely to resign, and otherwise challenged the assertions of the employer on the charge of misconduct. Secondly, that same cursory reading shows very clearly that Stall advanced to the Appeals Referee in his testimony the conviction which Stall held that he had in fact been discharged for exercising his First Amendment rights. Stall recites the incident of lunch with the Mayor where Stall indicated that he disagreed with the Mayor's request that he change his position on the North Charleston School Board matter and vote as the Mayor wanted him to vote. Stall states that he felt threatened "because I [Stall] interpreted the conversation as being very intimidating." (App. p. 59). Stall goes on to say "Well, he [the Mayor] wanted me to pull for John Graham Altman for Chairman, and that I didn't want to do that, and I felt like that, in itself, was going to, you know, cause ... one of the things to lose my job."

(App. p. 60). Further on, counsel for the employer asks Stall, "All right. Did the Mayor, in any way, threaten your job directly on the afternoon of January 8th, when he was talking to you about your School Board performance, as you described it?" Stall answered, "I felt like I was being intimidated by the things he was asking me." (App. p. 68). Without belaboring the point, it is transparently obvious that Stall advanced as strongly as he could his arguments that his discharge came about because of his exercise of his First Amendment rights, and not because of any misconduct on his part as an employee. Given the facts of this case, it is difficult to see how Stall could have advanced more forcefully in the hearing before the Appeals Referee his contention that he was discharged for exercising his First Amendment rights.

The record of the proceedings before the Appeals Referee went forward to the Commission, in accordance with Commission procedure. On August 27, 1982, the Commission reached its decision, by which it "modified" the holding of the Claims Adjudicator that Stall had "quit his work without good cause" and found Stall "to have been discharged for misconduct connected to this work" and found Stall to be "disqualified from receiving benefits for eight weeks ..." (App. p. 88).

In that opinion, the Commission recites the contentions of the parties, dealing principally with the resignation-withdrawal of resignation question, and reciting, "He [Stall] maintains that he was discharged by

§ 41-35-700, Code of Laws of South Carolina 1976. However, the same section provides that such a tribunal may consist of "either a referee, ... or a body consisting of three members, ...." For the purposes of this case, "Appeals Referee" and "Appeal Tribunal" both are embraced within the procedures for hearing and disposing of appeals.

All such appeals hearings "shall be de novo in nature and conducted informally and in such manner as to ascertain the substantial rights of the parties". R 47-51 C(1), Code of Laws of South Carolina 1976 Regulations.

2. In the Appendix, a copy of the federal complaint bears markings indicating that it was

"Exh. 1", with illegible initials appended, the initials perhaps being "clt", presumably standing for "claimant". It appears to have been included as an exhibit to the Appeals Referee's transcript of the proceeding before him, where it is shown as pages 64, 65, 66 and 67 of those proceedings. (App. pp. 80, 81, 82, and 83). It can be concluded that at this stage in the proceedings, and before the matter reached its ultimate conclusion in the Court of Common Pleas, a copy of the Complaint was filed among the papers which were ultimately received by the Court of Common Pleas.

his employer for other reasons." While the "other reasons" are not further explicated in the Commission's opinion, the record of the evidentiary hearing was before the Commission, containing only one "other reason", i.e., the assertion of violation of Stall's constitutional rights. (App. p. 88, 89).

Following the Commission decision, Stall perfected an appeal to the State's Court of Common Pleas. There, Stall succeeded in reversing the portion of the Commission's decision disqualifying him from receiving unemployment benefits for eight weeks. In the opinion filed in the Court of Common Pleas resolving the appeal to that court, the state court first indicated that

> The Court is bound by the findings of the South Carolina Employment Security Commission by authority of § 41–35–750 which reads as follows: "In any judicial proceeding under this chapter, the findings of the Commission as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive and the jurisdiction of the court shall be confined to questions of law."
>
> The facts, as indicated by the record are relatively simple.

(App. p. 90). The state court concluded that "[t]he sole reason for the termination was that the plaintiff had given and then rescinded his resignation," (App. p. 91), accepting the finding of the Commission that Stall's statement of intention to resign and subsequent rescission was misconduct, where the Commission found that "misconduct is a substantial disregard of the behavior which the employer has the right to expect of its employees, and the burden [is] upon the employer to show such. In this case, we believe the employer has done so...." (App. p. 92). The Court of Common Pleas then goes on to consider whether the misconduct of Stall in this case rises to meet the level of "misconduct" as defined under the South Carolina Employment Security Law, § 41–27–10 et seq., Code of Laws of the State of South Carolina 1976. Ultimately, its opinion concludes that Stall's conduct did not rise to

the degree of severity called for in the legal definition of "misconduct" under the South Carolina Employment Security Law and consequently held that Stall was entitled to unemployment benefits without any reduction in weeks of eligibility. (App. pp. 90–94). The Court of Common Pleas opinion indicates clearly that "the Court has carefully reviewed the documents, papers, and transcript of testimony in this case, together with the pleadings and has heard extensive argument of counsel and has carefully reviewed the various memoranda submitted by counsel." (App. p. 90). If we accept this language as accurate, then it is patent that the question of the Constitutional issue was before the Court of Common Pleas of the State of South Carolina. It is this fact which seems to account for the language used by the Court of Common Pleas to the effect that "the sole reason for the termination" was misconduct. *Stall v. North Charleston*, No. 82–CP–10–3501, slip. op. at 2 (S.C.Cir.Ct. Dec. 21, 1982).

If the language used by the South Carolina Court, as quoted above, were ambiguous or susceptible of more than one meaning, an interpretation of the language would be appropriate. Here, however, "sole reason for termination" is, we conclude, susceptible of only one meaning, and that a most clear one.

We conclude that the reasons for Stall's discharge were fully and fairly presented and litigated in an adjudicatory proceeding before the Commission and before the state court on the record made in the Commission proceedings in the context of Stall's unemployment benefits claim. Stall had a full and fair opportunity fully to present his constitutional contentions in an adjudicatory hearing before a court of competent jurisdiction, vested with the duty to hear and resolve questions appearing in the case before it. Supporting this conclusion is the provision of the South Carolina Administrative Procedures Act, § 1–23–380(g), where the South Carolina legislature has provided the appropriate standards which a court of record must employ in considering a decision rendered by an administrative agency.

In that section, the legislature has clearly provided as follows:

> The court may reverse or modify the decision [of the administrative agency] if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are: (1) in violation of *constitutional* or statutory provisions; ...

(Emphasis added). We should not conclude that the courts of South Carolina will not follow the requirements of their legislature.

Further, reading together the recitation in the opinion of the Court of Common Pleas that it had "carefully reviewed" all documents, pleadings, etc., in the case, (App. p. 90) and the language of the statute concerning violation of constitutional provisions leads inexorably to the conclusion that the constitutional contention raised by Stall was considered by the Court of Common Pleas. It is this conclusion which appears to have led that court to refer to misconduct as the "sole reason" for the discharge. The adjectival word, "sole", does not appear elsewhere in the Appendix in any of the various findings and conclusions reached in the proceedings prior to the hearing and opinion in the Court of Common Pleas.

Following the Order and Opinion of December 21, 1983, of the Court of Common Pleas, that Court entered a further Order on March 1, 1984, in which the Court granted the motion of plaintiff for an Order "construing and clarifying" the Order of December 21, 1982. In pertinent part, this latter Order reads, "in an effort to be fair to the litigants in this case, the Court now construes its Order of December 21, 1982. Before me was a legal issue—I decided a legal issue. The proceeding before me was legal not factual in nature." (App. p. 97).

This statement comports with the provisions of Section 41–27–10 et seq. South Carolina Code of Laws 1976 as amended, to the effect that facts found by the administrative body, if supported by evidence and in the absence of fraud, shall be conclusive in the reviewing court, with that court confined to questions of law.

Of interest, however, footnote 2 of the opinion of the District Court states that "The defendants have appealed this Order." (App. p. 103). The record before us discloses nothing further concerning this appeal, but certainly an appeal has been taken by defendants from the Court of Common Pleas, at least as to this "clarifying" order.

Following the decision of the Court of Common Pleas of December 21, 1982, Stall did not appeal further to the Supreme Court of South Carolina, but then attempted to proceed on his complaint in the United States District Court. The dissent argues that Stall could not appeal because he had won all that he could win in the proceedings in the Court of Common Pleas. Assuming, without agreeing, that this is so, the fact is that the issue had been decided. The reason for Stall's discharge was found to be misconduct. Only by relitigating this very issue could Stall proceed in the district court, offering there the same evidence in his constitutional claim which had been fully considered in the proceedings leading up to and including those before the Court of Common Pleas.

It should be noted, however, that Stall could have made a respectable argument that he had been aggrieved by the Court of Common Pleas finding of misconduct, especially where he asserted he had committed no misconduct and that his discharge was in violation of his constitutional rights. No further monetary award was due to Stall on his unemployment benefits claim, but the consequences of a finding of misconduct on future employment, etc., gave Stall reason at least to attempt to appeal. Of course, the cryptic note as to the defendants' appeal of the second, "clarifying" order of the Court of Common Pleas may have afforded a vehicle for cross-appeal, as well. So far as the record discloses, however, Stall made no effort to appeal.

■ Upon proceeding in the United States District Court, Stall was met, as might reasonably have been expected, with

a defense of issue preclusion on his assertion of a constitutional violation as the reason for his discharge. The basis for the defense was that the issue of the reason for his discharge had been heard and determined in the prior proceedings. The foregoing discussion of Stall's unemployment benefits claim, and the procedures involved in that claim, demonstrates the reasons for the district court's application of the principles of issue preclusion in granting defendants summary judgment on Stall's constitutional claim. It is well settled that federal courts must give the same preclusive effect to a state court judgment as that judgment would be given by that state's courts. *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Kremer v. Chemical Construction Co.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982); *Moore v. Bonner,* 695 F.2d 799 (4th Cir.1982).

The "other tribunal" question troubling to the court in footnote 3 in *Anderson v. Babb,* 632 F.2d 300, 307 (4th Cir.1980) can arise in this case only by attenuated indirection. In *Anderson,* the District Court was construing a North Carolina statute which had been construed by that state's State Board of Elections, a body made up of a "deliberately intended political composition" of three Democrats and two Republicans. The District Court construed the statute differently than had the State Board. Of far greater significance, however, no court of the State of North Carolina had passed on the State Board's interpretation before the matter reached the District Court.

Further, as noted by the district court, *Kremer* and *Moore* stand for the proposition that the issue preclusive effect of a state court's review of an administrative decision is not undermined merely because the state court did not conduct a *de novo* review. Thus, as the district court correctly recognized, the question of whether Stall was precluded in federal court from relitigating the reason for his discharge turned on South Carolina's law on issue preclusion.

Recent decisions from the South Carolina courts indicate that issue preclusion is proper if the issue in question was presented in a prior adjudicatory proceeding in which the party against whom preclusion is sought had a full and fair opportunity to litigate the issue. *See, e.g., Beall v. Conerly,* 281 S.C. 363, 315 S.E.2d 186 (S.C.App. 1984), *Graham v. State Farm Fire & Casualty Insurance Co.,* 277 S.C. 389, 287 S.E.2d 495 (1982). (In *Graham,* the court held that the issue as to which preclusion was sought had not been in fact before the court below, but the language of the opinion is instructive as to the status of South Carolina law on the point at issue in this case.) In addition, as the district court observed, the South Carolina Supreme Court has consistently ruled that an unappealed order is binding on all parties before the court, and is entitled to preclusive effect. *Lowe v. Clayton,* 264 S.C. 75, 212 S.E. 582 (1972); *Earle v. Aycock,* 276 S.C. 471, 279 S.E.2d 614 (1981). In *Graham, Lowe,* and *Earle,* the party against whom a previous adverse decision was asserted as issue preclusive had not appealed from that previous adverse decision. In *Graham,* the court cites prior cases, the earliest cited being 1910, which support the discussion in *Graham,* though the earlier cases speak in terms of estoppel and *res adjudicata,* rather than in terms of the more recent analyses using the phrases of claim preclusion and issue preclusion. In *Earle,* in a fact pattern somewhat similar to that of this case, Earle (the aggrieved party) had not appealed from an adverse decision of the state grievance committee, which committee found that Earle had been properly discharged. Though we note that Earle did not appeal from the committee to the courts, as happened in this case, certain of the language of the opinion of the Supreme Court of South Carolina is nonetheless pertinent in showing that court's view of the law of that state. Quoting from *Derrick v. Gaston School District of Lexington County,* 172 S.C. 472, 478, 174 S.E. 431 (1934), the court noted the *holding* in *Derrick* as follows:

He (the teacher) would have two tribunals, to both of which he might appeal, the county and state boards of education; or he may proceed in the Courts. But he may not try both the boards of education and the Courts and then select the decision of that one which best suits him.

No authority has been cited or found which would indicate that the rationale of *Lowe* and *Earle* is not the law of South Carolina. If such an unappealed order is entitled to preclusive effect under the law of South Carolina, then it must be given that effect in this case.

Based on South Carolina's law on issue preclusion, we find that the district court correctly ruled that Stall was precluded from relitigating the reason for his discharge. We can find no basis for concluding that the adjudicatory proceedings before the Commission and the state court provided Stall with less than a full and fair opportunity to litigate the reason for his discharge. It is clear that Stall did exactly that, and that the reason for Stall's discharge was actually and necessarily litigated before the Commission, resulting in the Commission's determination that Stall was discharged for work-related misconduct.

Although the state court was authorized to reverse any finding by the Commission not supported by substantial evidence, etc., it chose, properly, to resolve the argument before it on the question of law as to whether the giving of a resignation and its rescission prior to the time of resignation constitutes "misconduct" under the South Carolina Employment Security Law, as discussed *supra*. As indicated, the court concluded that the legal definition of "misconduct" was not implicated by the giving and rescinding of the resignation under the facts of this case. Stall did not appeal from the state court's ruling; thus, under South Carolina law noted *supra*, the South Carolina courts would preclude Stall from relitigating the reason for his discharge. Based on that conclusion, we find that the district court properly precluded Stall from relitigating that issue.

Where such disparate filings are made as in this case, which filings raise in each proceeding the same issue, i.e., here, what was the reason for Stall's discharge, caution would dictate that the plaintiff should proceed in that forum which would afford the plaintiff the greatest relief, or more of the relief which is sought. In this case, resolution of the issue of the reason for discharge favorably to the plaintiff in the Commission proceedings could bring him only the statutory unemployment benefits; resolution of that same issue favorably to the plaintiff on his complaint in District Court would bring him the full panoply of relief sought in that suit, ranging from damages to reinstatement.

It is possible that the reason Stall elected to pursue the Commission remedy, and did not pursue further an appeal from the State court proceedings flowed from a misperception of the effect of the decision of the Court of Common Pleas in terms of issue preclusion. If that was Stall's misperception, we should not as an appellate court disturb the state's settled law governing issue preclusion to correct that misperception of the law.

For all the foregoing reasons, the order of the district court is

AFFIRMED.

MURNAGHAN, Circuit Judge dissenting.

The law follows (or perhaps leads) the practice of other professions in the affectionate use of recondite terms of little apparent sense, standing solely on their own. Regrettably, lawyers sometimes use legal terms possessed of technical meanings imprecisely, if not inaccurately, which leads to obfuscation and confusion. Unfortunately the result is frequently one of frustration amounting to helplessness on the part of laymen confronted by the incomprehensible phraseology. Perhaps I have been as guilty as others in my off-hand resort to *res judicata*, collateral estoppel (offensive collateral estoppel and defensive collateral estoppel) and issue preclusion to describe a phenomenon quite capable of expression in

terms readily comprehensible by the ordinary layman.

Here particularly is a case where it helps to peel away the needless veneer of those terms of art, and get down to what, in plain English, is really intended. It is a cardinal principle of the law that everyone involved in a dispute should have his day in court—a full day in court.[3] A corollary exists, however, that a litigant is entitled to but one full day.[4] The question here is simply whether Stall already had his one full day in state court to resolve a vital factual issue common both to a state claim for unemployment compensation and to an assertion of damage for violation of his first amendment rights,[5] sufficient to preclude his claim in federal court under 42 U.S.C. § 1983.

To answer that question necessitates a detailed review of the pleadings, the evidence presented, and the actions, both administrative and judicial, taken by the state agency and the state court.

1. Following his March 1, 1982 discharge, on March 3, 1982, Stall, acting on his own behalf, requested of the South Carolina Employment Security Commission a determination of his insured status. On March 8, 1982, the employer statement of the North Charleston Public Works Department was filed, reading:

> Employee has expressed his dissatisfaction with his status for approximately two years. On more than one occasion employee made known his intention to return to school. The employee notified his department head that he would leave by 1 March 1982. On 15 January 1982 the department head requested a firm date for planning purposes. On 18 January 1982 the employee stated he had again changed his mind and did not desire to leave his employment at this time. The employee was informed that it was impossible to maintain a functional operation with a state of uncertainty, therefore his last day of employment would be 1 March 1982.

On or about March 12, 1982, Stall's Claimant's Statement, prepared and presented *pro se*, was submitted to the effect that:

> March 1 was the last day I worked with City of N. Chas. Ross Walker, Dir. of Public Works told me I was being discharged. I did not state in January that I intended to leave by March 1st. I was never dissatisfied with my position. I was interested in my future and the possibility of promotion within that department or another area of work with the City. I feel I was terminated for political reasons.
>
> I am able, available, and looking for work.

Thereupon, on March 18, 1982 a claims adjudicator filed a report in which she alluded to Stall's position that "he was terminated for political purposes," but concluded that "the claimant voluntarily quit his job with the above employer when he advised his employer that he was leaving on 3–1–82."

2. On March 5, 1982, Stall had instituted the instant action in federal court asserting the above mentioned invasions of his first amendment rights as well as associated denials of due process.[6]

3. On March 25, 1982 Stall took an administrative appeal from the order of a claims adjudicator for the South Carolina

---

**3.** *See Township of Hopewell v. Volpe,* 446 F.2d 167, 170 (3rd Cir.1971) ("Every litigant is entitled to a full and fair day in court.").

**4.** *See Hooper v. United States,* 326 F.2d 982, 985 (Ct. of Cl.1964), *cert. denied,* 377 U.S. 977, 84 S.Ct. 1882, 12 L.Ed.2d 746 (1964) (". . . application of res judicata and collateral estoppel . . . is a judicially developed restriction invoked in the name of public policy requiring that a litigant be given only one day in court.").

**5.** The rights asserted were freedom of expression, freedom of assembly and the right to seek elective office and serve therein free from threats and intimidation of public officials.

**6.** Stall was apparently covering all of his legal bases by bringing both a federal § 1983 action and a state claim for unemployment compensation at approximately the same time. His intention from the commencement of the suit apparently was to treat the two claims separately.

Employment Security Commission denying him unemployment compensation on the grounds that he was terminated and did not resign. The appeal reached the South Carolina Employment Security Commission only on April 14, 1982, because it had been wrongly addressed. The appeal, on April 16, 1982, was dismissed as untimely. Counsel representing Stall in the federal case sought reconsideration of the dismissal of the state administrative appeal. The Employment Security Commission decided to allow Stall's appeal as timely.

4. An evidentiary hearing in the state administrative proceeding followed on July 1, 1982. Evidence was adduced before a hearing examiner concerning the assertions of constitutional violations.[7]

5. On August 25, 1982, the Commission held a nonevidentiary hearing, after which a Decision, based on the testimony adduced at the July 1, 1982 evidentiary hearing, was promulgated on August 27, 1982. The Commission found Stall was discharged for "misconduct connected to his work." The decision stated, in summary form, evidence of statements by Stall that he would be leaving his job. It mentioned also that

Stall maintained "that he was discharged by his employer for other reasons." The "other reasons" were never elucidated in the Decision of August 27, 1982.

The conclusion on the point of principal concern addressed in the Decision of August 27, 1982 was that Stall had no intent to resign his job when he was separated by his employer. As for any earlier intention to resign, the Commission observed that Stall had changed his mind. The Commission concluded, therefore, that Stall's departure from his job was involuntary, i.e., he was discharged by his employer.

The Commission then addressed the question of whether the discharge was for misconduct which would disqualify Stall from unemployment compensation benefits. It went on to conclude that there was misconduct in the form of "substantial disregard of the behavior which the employer has the right to expect of its employees" in Stall's vacillation over whether he intended to resign. The Commission added that disqualification for benefits was justified because of the misconduct, and because of the employer's dissatisfaction with Stall's

---

7. For example, Stall described a January 8, 1982 conversation between himself, as a school board member, and the Mayor of the City of North Charleston:

A: The conversation involved his dissatisfaction with the fact that he said that I was representing the people in the north area poorly, improperly; therefore, my actions on the School Board were relative or ran parallel with my job with the City, and that fact that he indicated that there was a possibility that, you know, was probably making the City look bad. And he was basically ... The whole conversation was centered around what he perceived as my inability to get anything done on the School Board, and the fact that several people from the disc ... (sic) Constituent Board, and also from school officials had come to him and related the same information to him. And he was more or less trying to tell me I needed to be a team player. I needed to vote for a fellow named John Graham Altman with (sic) one of the major topics ... He was up for reelection for chairman of the School Board, and he was seeking my support to vote for him again in January of 1981. And the whole conversation from the time I got there until the time we left after having lunch was centered around, you know,

my performance on the School Board as he perceived it.
Q: Did you discuss any business as far as public works of the City of North Charleston was concerned?
A: No sir.
....
I mean I was told by the Mayor that I had stopped the north area from getting bond money, when, in fact, I'm the one that got $6.5 million for bonds ... and that I was not repre ... He was a constituent of mine, and he felt like he had a right to tell me ... Even when I walked in, he said, "I'm going to tell you ... I want you to prepare yourself right now because some of the things I'm going to say to you are very hard, so I want to let you know in advance." And I stopped him right then, and I said, "No." I said, "If you're going to say anything like that to me, then I want to know whether or not you're going to respect my right to answer them."
Stall left the meeting with the impression that the Mayor did not like the positions he had taken, and concluded that he "was going to end up losing my job." Asked by the employer's attorney whether the Mayor had threatened his job, Stall replied affirmatively citing a sense of intimidation as a result of the Mayor's demands.

work performance, which indicated "that he was at fault for his unemployment." The grounds for employer dissatisfaction were not spelled out in any way in the Decision of August 27, 1982. The reference earlier to Stall's assertion of "other reasons" can only be to his claim of politically motivated discharge. There was no attempt to dispose of Stall's politically motivated contentions in the August 27, 1982 Decision.

It is for me difficult to read that Decision as dispositive one way or the other of the contention that there had been termination for exercise of protected first amendment rights.[8] The reference to Stall's constitutional claims is altogether cursory, and no analysis is offered. While it may perhaps be inferred that a claim of interference with first amendment rights may have been considered and rejected, nothing in the Decision so states. Indeed, it could be convincingly argued that the only "other reasons" leading to employer dissatisfaction mentioned in the Decision besides the expression of an intent of Stall to leave his job were the asserted first amendment violations. It is difficult to conclude, as the defendants must argue to make their point, that, therefore, his exercise of his constitutional rights was why "he was at fault for his unemployment." A state agency should not lightly be assumed to have disregarded so totally the first amendment to the Federal Constitution. The assumption, moreover, would lead to the inevitable conclusion that the state agency resolution of the crucial issue of fact was favorable—not unfavorable—to Stall. Accordingly, I am not satisfied that the issue was even addressed, much less disposed of. However, for present purposes we may assume that the issue was considered and decided adversely to Stall.

Yet, even if the Decision of August 27, 1982 can be stretched out of shape to constitute a determination that the evidence did not support the contention that Stall had been fired for exercise of constitutionally protected rights, it, nevertheless, would not be the product of a full day in court because Stall did not accept the Decision of August 27, 1982. Instead he took an appeal to the Charleston County South Carolina Court of Common Pleas. In the appeal, the South Carolina court, in an opinion dated December 21, 1982, outlined only those facts relating to the remarks of Stall that he might resign, concluding that he "did not resign and informed the employer in writing that he did not intend to resign." The court further determined that "[t]he sole reason for the termination was that [Stall] had given and then rescinded his resignation."

The issue before the court was "whether or not the Commission made a legal error in concluding that the giving of a resignation and the rescinding of it prior to the time of resignation constitutes 'misconduct' under the South Carolina Employment Security Law." The resulting determination was "that the Commission erred as a matter of law in its decision of August 27, 1982 and that this decision must be reversed. The Plaintiff is entitled to the relief sought."

Nowhere in the opinion of the Charleston County Court of Common Pleas is the matter of first amendment violation assertions by Stall mentioned. The defendants seek to raise another negative inference, arguing that if the vacillation over resignation was the "sole reason for the termination" the asserted political motivations must have been rejected. I, however, do not read the opinion, which never alludes, in any way, to the assertions of political motivation in the way that the defendants assert. They would expand the statement to read: "The sole reason for the termination, *all other asserted ones having been considered and found to be without merit,* was that [Stall] had given and then rescinded his resignation." The proper reading,

---

**8.** Such a conclusion is reinforced when one considers that the South Carolina Employment Security Commission's primary function is the review of claims for the award of unemployment compensation insurance and not the adjudication of first amendment rights. *See Anderson v. Babb,* 632 F.2d 300, 306 n. 3 (4th Cir. 1980).

however, I submit, should be: "The sole reason for the termination *on which a disqualification for unemployment compensation purposes could be asserted by the employer* was that [Stall] had given and then rescinded his resignation." On that reading, the asserted first amendment violations are not implicated in any way whatsoever.[9] For application of the doctrine of issue preclusion, there must have been actual litigation and direct determination of the issue in the prior action. *Beall v. Doe*, 281 S.C. 363, 315 S.E.2d 186 (Ct.App.1984). *Cf. Lowe v. Clayton*, 264 S.C. 75, 212 S.E.2d 582 (1972). The judicial proceedings of any state court shall have the same full faith and credit in any federal court action as they have by law or usage in the courts of such state. 28 U.S.C. § 1738. Given the cursory (or perhaps non-existent) review which the Commission and state court gave Stall's first amendment claim, it can hardly be said that the issue was actually litigated, that it was essential to the Commission's or the court's judgment,[10] or that Stall had a full and fair opportunity to present his claim.

Even assuming, for the sake of discussion, that the reading urged by the employer as to what the Employment Security Commission and the state court undertook to decide is the correct one, still a full day in court on the question has not been accorded to Stall. His victory in the litigation before the South Carolina Employment Security Commission and the Charleston County Court of Common Pleas was ultimately total.[11] The court ordered:

> that the South Carolina Employment Security Commission is directed to pay to the Plaintiff all benefits due him under the Employment Security Act and any extended benefits or other benefits thereunder; that the records of this state shall reflect that the Plaintiff was not guilty of any disqualification under the South Carolina Employment Security Law, Section 41–27–10 *et seq.* and that the Plaintiff was not guilty of misconduct under said law.

Stall, as the winner, could take no appeal.[12] There was nothing for him to appeal

**9.** That reading is borne out by an order dated March 1, 1984 of the Charleston County Court of Common Pleas construing and clarifying the December 21, 1982 opinion by stating that it was one involving only a legal issue, the proceeding being exclusively legal, not factual in nature. Moreover, § 41–35–750 of the South Carolina Code of Laws (1976) precludes a state court from reviewing the Commission's findings of fact and confines the court's inquiry to questions of law.

**10.** Restatement (Second) of Judgments, § 27, comment j (1982).

**11.** Consequently, it cannot be gainsaid that a decision on the constitutional issues, whichever way it went or might have gone was altogether unnecessary to the outcome of the unemployment compensation litigation. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1978) ("Under the doctrine of collateral estoppel, on the other hand, the second action is on a different cause of action and the judgment in the prior suit precludes relitigation of issues actually litigated *and necessary to the outcome of the first action*.") (Emphasis supplied).

**12.** The South Carolina court's decision gave Stall everything he was seeking. The decision in Stall's favor was that "[t]he Plaintiff is enti-

tled to the relief sought." If the court had explicitly found that Stall's Fourteenth Amendment rights had been violated, he, nevertheless, would have received no other or further relief whatsoever. He could, in short, have achieved no greater victory by appealing. A busy judicial system cannot frivolously indulge a plaintiff who has named $10,000 in his *ad damnum* clause and proceeded to win a judgment for the full $10,000, although only one of two theories advanced has been accepted by the lower court and he is determined to prove he was right twice times over. It would be a pointless, time-consuming and costly violation of the requirement of a true case or controversy to allow him to prosecute an appeal because he wants to win the other way and not just the way he has in fact won. "The function of appellate courts is not to give opinions on merely abstract or theoretical matters, but only to decide actual controversies injuriously affecting the rights of some party to the litigation." *Wallace v. City of York*, 276 S.C. 693, 694, 281 S.E.2d 487, 488 (1981).

Had *the employer* appealed, what the majority has concluded arguably could have had some substance, for then it might have been expedient for Stall to cross-appeal. But he was afforded no chance to appeal. The employer instead accepted complete defeat.

I emphatically disagree with the majority's conclusion that Stall might, nevertheless, have

from.[13] The employer elected not to appeal, allowing Stall's complete victory to become final.[14] Consequently, Restatement (Second) Judgments § 28(1) (1982) applies:

> Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential

to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:

(1) The party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action....

appealed the finding supposedly made by the state court that his discharge was not politically motivated. Even had there been such a finding, which I seriously doubt, an appeal is taken from the holding—the decree or judgment—itself, not from a reason set forth in an opinion to justify it. Annot., *Formal Requirements of Judgment or Order as Regards Appealability*, 73 A.L.R.2d 250, 291–92 (1960):

> It has generally been held that no appeal lies from a court's findings, findings of fact, conclusions, or conclusions of law.

**13.** *See Right of Winning Party to Appeal from Judgment Granting Him Full Relief Sought*, 69 A.L.R.2d 701, 742, § 19(a) (1960). A host of cases appears in § 19(a) ("As to adverse findings on specific issues. Generally") of that Annotation and in the Later Case Service thereto in support of the general rule "that a party who has obtained full relief in the court below is not entitled to appeal for the purpose of attacking a finding on a specific issue made by the court below in connection with the judgment in his favor." In § 19(b) ("Limitations on general rule"), on the other hand, the sole case arguably reaching the contrary result is *Partmar Corp. v. Paramount Pictures Theatres Corp.*, 347 U.S. 89, 74 S.Ct. 414, 98 L.Ed. 532 (1954), which is readily distinguishable in an important, indeed controlling respect. *Partmar* did not, as is the case here, involve two separate and distinct proceedings. Rather a point was asserted by the plaintiff and the same issue was introduced by the defendants in counterclaims pleaded by them. The two proceedings, one of which was claimed to bar the other on a *res judicata* or collateral estoppel basis hence arose in the very same litigation. When one of the two became final, the refusal to permit relitigation with respect to the other was understandable, though perhaps the litany is more properly one "of the law of the case", than it is of *res judicata* or collateral estoppel.

Even so, *Partmar* was seriously criticized by Chief Justice Warren, joined by Justice Black. *See Partmar*, 347 U.S. at 109 n. 8, 74 S.Ct. at 425 n. 8:

> There is yet an additional reason for not applying the doctrine of collateral estoppel here. Petitioner, as the successful party in the eviction suit, could not appeal the District Court's finding that there was no evidence of conspiracy. *Lindheimer v. Illinois Bell Telephone Co.*, 292 U.S. 151, 176 [54 S.Ct. 658, 668, 78 L.Ed.

1182]; *New York Telephone Co. v. Maltbie*, 291 U.S. 645 [54 S.Ct. 443, 78 L.Ed. 1041]. The adverse finding was not included in the Court's decree, as in *Electrical Fittings Corp. v. Thomas & Betts Co.*, 307 U.S. 241 [59 S.Ct. 860, 83 L.Ed. 1263]. Because of this inability to appeal, the finding cannot bind petitioner in a subsequent action between the parties based upon a different cause of action. See Restatement, Judgments § 69(2); Scott, Collateral Estoppel by Judgment, 56 Harv.L.Rev. 1, 15–18.

The Court's opinion (footnote 6) concedes that inability to appeal precludes a subsequent application of collateral estoppel, but contends that petitioner could have appealed here because the trial court's finding in the eviction suit (as to the absence of proof of conspiracy) was material to the decree in the eviction suit. The Court's opinion cites no case, in this Court or any other, holding that a successful party can appeal findings which are not inserted as part of the decree. Indeed, the opinion overlooks the very holdings of this Court on which it relies for support. In both *Lindheimer v. Illinois Bell Telephone Co., supra*, and *New York Telephone Co. v. Maltbie, supra*, the findings which the public utility sought to appeal related to the value of its property for rate-making purposes; in each case, the trial court had held that the rates fixed by a state commission were confiscatory *on the basis of those findings.* Yet this Court held that the public utility, as the successful party, could not appeal those findings. Surely in this case the trial judge's finding as to conspiracy was no more "material" than the findings which this Court refused to review in *Lindheimer* and *Maltbie.*

**14.** Under South Carolina law one must be aggrieved to appeal. S.C.Code of Laws § 18–1–30 (1976). Ordinarily, a judgment in one's own favor cannot be appealed. *Wilson v. Southern R. Co.*, 123 S.C. 399, 115 S.E. 764, 766 (1923). Under federal law, a party who receives total relief is not aggrieved and therefore cannot appeal from a judgment in his favor. *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 333, 100 S.Ct. 1166, 1171, 63 L.Ed.2d 427 (1980); *Public Service Commission v. Brashear Freight Lines, Inc.*, 306 U.S. 204, 206, 59 S.Ct. 480, 481, 83 L.Ed. 608 (1939). There simply is no case or controversy if such an appeal is attempted.

Since South Carolina has specifically accepted the law of Restatement (Second) Judgments §§ 27 and 29 (*see Beall v. Doe, supra,* 315 S.E.2d at p. 190), it is to be expected that § 28 will, when the occasion arises, be accepted as an accurate representation of South Carolina law. It makes eminent good sense and commends itself to one's sense of fairness.[15]

An examination of the judicial and administrative proceedings on the state side · of the street makes it readily apparent that, upon the facts of the present case, Stall never received his one full day in court to litigate his first amendment claims. It is doubtful that the Employment Security Commission resolved the factual issue at all. It is clear that the state court did not, and, even if it had done so, by deciding for Stall on other grounds it rendered unavailable the right of appeal necessary to make the decision complete. By achieving complete victory in the state court, Stall had rendered moot, *i.e.,* not amenable to appellate review, the issue of Stall's constitutional claims. Now to hold Stall precluded from litigating a question in federal court which played no part whatsoever in the state decision is to render his day in court empty, not full. The district court's grant of defendant's motion for summary judgment was erroneous.[16] I respectfully dissent.

---

15. A holding that a state unemployment compensation decision was not entitled to collateral estoppel effect in a federal Title VII employment discrimination case brought by the same party, even though the unemployment compensation result fully favored the employer and was finally affirmed by the Circuit Court of Baltimore City, was made in *Ross v. Communications Satellite Corp,* 759 F.2d 355, 360–62 (4th Cir.1985). Stall's case is even stronger, of course, since, in his case, the unemployment compensation decision was finally fully favorable to him. Stall, the victor, could not appeal, while the losing plaintiff in *Ross* could have done so but did not. Md.Code Ann. art. 95A § 7(h) (1979). I perceive no reason why the law of South Carolina should differ from that of Maryland on the principle of general application that one who achieves total victory is in no way precluded by an adverse finding on an issue which did not affect the outcome of the case.

16. It hardly needs emphasizing that the position I have taken in no way intimates that Stall will win in federal court. It only assures that he will be able to present his case and have it judicially addressed and decided. The employer would be accorded every opportunity to establish that, on the merits, it had not invaded Stall's first amendment rights. The burden of proof would remain on Stall.