**Valerie M. TAYLOR, Plaintiff,**

v.

**CITY NATIONAL BANK, Defendant.**

Civ. A. No. 2:85–0796.

United States District Court,
S.D. West Virginia,
Charleston Division.

Aug. 28, 1986.

J. Michael Ranson, Bucci & Ranson, Charleston, W. Va., for plaintiff.

Otis L. O'Connor, Charleston, W. Va., A. Neal Barkus, Hunton & Williams, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

In this action brought under federal and state employment discrimination laws, Valerie Taylor (the Plaintiff), a black woman, claims that she was discriminatorily treated by City National Bank (the Defendant) on account of her race. The Defendant denies the Plaintiff's allegations and has moved for summary judgment, citing procedural and substantive grounds. The Court now deems the motion mature for decision.

### I. *Background*

The Plaintiff was hired by the Defendant in November of 1980, as a bookkeeper. She was employed at the Defendant's banking facility located in the Kanawha City area of Charleston, Kanawha County, West Virginia. In May of 1983, the Plaintiff applied for a teller position at the bank. She was denied the promotion.[1] A white woman from another bank was hired for the position.

On June 22, 1983, the Plaintiff filed a charge of race discrimination with the West Virginia Human Rights Commission (the Commission). The Commission cross-filed the charge with the Equal Employment Opportunity Commission (EEOC). A few months later the Plaintiff went on maternity leave and did not return to work until May 19, 1984. In the interim, the Commission had been processing the discrimination charge and issued on May 19, 1984, a determination of reasonable cause to believe discrimination had occurred.

Citing harassment and reprisals for filing the discrimination charge, Plaintiff resigned in August of 1984. On May 15, 1985, the EEOC issued a right to sue let-

1. The Plaintiff claims that she was also passed over for other promotional opportunities.

ter.[2] The Plaintiff initiated this action on July 3, 1985.

The Plaintiff has recently moved to amend her complaint. No action has been taken on the motion. The Defendant, however, does not oppose the motion and the briefing of the summary judgment motion was done on the assumption that the amended complaint is the controlling document.[3] The amended complaint contains three counts. Count I of the amended complaint is brought under Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e, et seq. It alleges that the Plaintiff was denied promotional opportunities because of her race and that as a result she was constructively discharged. Count II accuses the Defendant of retaliating against the Plaintiff for filing the administrative charge. Count III contains allegations similar to Count I. Count III, however, is brought pursuant to the West Virginia Human Rights Act. Counts II and III invoke the pendent jurisdiction of the Court.

The Defendant has raised several grounds in its motion for summary judgment. The Court will address each in turn.

## II. *Discussion*

### A. *Failure to Promote.*

The Defendant argues that it is entitled to summary judgment on the Plaintiff's promotion claim on the basis of the Plaintiff's own testimony. It provides a portion of the transcript of the Plaintiff's deposition in which she is questioned about the nature of her qualifications versus those of the successful applicant.

"Q Did you know more about being a teller than someone who had been a teller somewhere else?

A No.

Q Well, if somebody had been a teller somewhere else they were really better qualified than you for the teller's job?

A Yes.

\* \* \* \* \* \*

Q Who got the job that was vacant in May of 1983? Do you know that?

A I don't recall her name, but I know who it was.

Q Was it Patricia Lynn?

A Yes.

Q Do you know what Patricia Lynn's qualifications were?

A Some of them yes. She was from another bank.

Q Had she been a teller in another bank?

A Yes.

Q So she was better qualified for this job than you were?

A Yes."

Plaintiff's deposition pp. 91–92, 94. The Defendant has also attached an affidavit of Steve Day, cashier at the Defendant bank. Day emphasizes the qualifications of Patricia Lynn, the successful applicant, and that he considered her, at the time of selection, to be better qualified than the Plaintiff for the position of teller.

In response to the Defendant's factual gatherings, the Plaintiff refers to the findings of the West Virginia Human Rights Commission. The Commission issued a determination of probable cause based upon findings that the Defendant did not consistently use previous work experience as part of its hiring criteria, that the Plaintiff was more experienced than the successful applicant, and that the Defendant used subjective hiring criteria.

The Court believes the arguments of counsel to fall into the three-part analysis formulated by the Supreme Court in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668

---

**2.** The West Virginia Human Rights Commission issued a right to sue letter on July 2, 1984. The Plaintiff, however, took no action on this letter until March 26, 1986, when she filed her amended complaint.

**3.** The Court will enter an Order granting leave to the Defendant to file an amended answer.

(1973) and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1980). In *McDonnell-Douglas* and *Burdine*, the Court announced a production shifting mechanism designed to assist the Court in ordering the proof at trial.

"First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' ... Third, should the Defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."

*Burdine*, 450 U.S. at 252–53, 101 S.Ct. at 1093 (quoting in part *McDonnell-Douglas, supra*). The above scheme has also been found appropriate for use at the summary judgment stage. *Meiri v. Dacon*, 759 F.2d 989 (2d Cir.1984), *cert. denied*, — U.S. ——, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985).

The Defendant argues that the Plaintiff's apparent admission that the successful applicant was more qualified than the Plaintiff precludes her from establishing a *prima facie* case at trial. It thus concludes that summary judgment is appropriate.

The Defendant's argument is based in part upon the model formulated in *McDonnell-Douglas*. That model was designed to assist the Plaintiff in establishing a *prima facie* case of discrimination, the first part of the three-step process. Modified to fit the facts at hand, the model requires that a plaintiff show the following:

"(i) that he belongs to a racial minority; (ii) That he applied and was qualified for a [promotion] for which the employer was seeking applicants; (iii) That, despite his qualifications, he was rejected; and (iv) That, after his rejection, the position remained open, and the employer continued to seek applicants from persons of complainants qualifications."

*McDonnell-Douglas v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). The Defendant argues that the Plaintiff cannot meet the requirements of this model because she was not as well qualified as Lynn, the successful applicant. It must be noted, however, that the *McDonnell-Douglas* model does not measure qualifications relative to other applicants; it speaks in terms of whether the applicant is qualified for the position.[4]

In *United States Postal Service Board of Governors v. Aikens*, 453 U.S. 902, 101 S.Ct. 3135, 69 L.Ed.2d 989 (1981), Justice Marshall, joined by Justice Brennan, objected to the Court's summary vacation of the Court of Appeals decision.[5] Justice Marshall was concerned that the Court might be viewed as endorsing a rule of law employed by the district court which the Court of Appeals had held to be erroneous. In a failure-to-promote case, the district court had held that the plaintiff had failed to establish a *prima facie* case because he had not shown "that he was as qualified or more qualified than the individuals who were promoted." *Id.* at 903, 101 S.Ct. at 3135. Justice Marshall believed that this requirement was "plainly at odds" with the express language of the *McDonnell-Douglas* decision.

On remand to the Court of Appeals, the D.C. Circuit reconsidered the case and again held that the district court had misapplied the law. It noted that the "Supreme Court has never stated that establishment of a *prima facie* case must include proof that the plaintiff was 'as qualified or more qualified' than the persons hired or promoted." *Aikens v. United*

---

**4.** The Defendant has offered no evidence that the Plaintiff was not qualified for the position.

**5.** In the order, the Court succinctly stated the following: "Certierori granted, judgment vacated, and case remanded for further consideration in light of *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)." *Id.*

*States Postal Service Board of Governors,* 665 F.2d 1057, 1059 (D.C.Cir.1981). The case went back up again to the Supreme Court. The Supreme Court then held that since the case had been tried on the merits of the district court level, the lower courts should ignore the question of *prima facie* burden and proceed directly to the issue of discrimination *vel non.* It did not address the issue raised by Justice Marshall's earlier dissent.

 The Court agrees with the D.C. Circuit's reasoning; to make out a *prima facie* case under the *McDonnell-Douglas* model, the Plaintiff should only have to show that he was qualified for the position. As Justice Marshall pointed out in *Aikens,* "the fact that the chosen employee was *more* qualified than other qualified applicants for the job is the sort of justification that the employer is entitled to use to rebut the *prima facie* case." 453 U.S. at 905–06 n. 2, 101 S.Ct. at 3136–3137 n. 2. Of course, an employer has the right to set minimum qualifications for a position, and, in making out a *prima facie* case, the plaintiff must establish that he meets those qualifications. *EEOC v. Federal Reserve Bank of Richmond,* 698 F.2d 633, 671 (4th Cir.1983), *reversed on other grounds sub nom, Cooper v. Federal Reserve Bank,* 467 U.S. 867, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984). But the Defendant here tries to put a further burden on the Plaintiff's task of making out a *prima facie* case. The Court believes this to be improper.

 Implicit in the above discussion is the notion that the Plaintiff has to resort, or would resort, to the four-step *McDonnell-Douglas* model for establishing a *prima facie* case. This is not necessarily so. In noting that it "did not purport to create an inflexible formulation," the Supreme Court has stated that the *McDonnell-Douglas* model was not "the *only* means of establishing a *prima facie* case of individu-

al discrimination." *Teamsters v. United States.* 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977). Therefore, if a plaintiff has independent, or direct, evidence of racial animus, she will not have to resort to the model. *Gairola v. Commonwealth of Virginia, Department of General Services,* 753 F.2d 1281 (4th Cir.1985) (plaintiff had to resort to the *McDonnell-Douglas* presumption because she had no independent evidence on the motivational issue). The *McDonnell-Douglas* model allows a plaintiff to use circumstantial evidence to build her *prima facie* case. As the Supreme Court has said, "[t]here will seldom be 'eyewitness' testimony as to the employer's mental processes." *United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 716, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983). Therefore, the use of circumstantial evidence, at least initially, may be necessary.

 The Plaintiff here, however, is not one who is without direct proof of discriminatory motive on the part of her employer. Attached in support of her memorandum opposing the Defendant's summary judgment is the deposition of E.L. Burton, a former employee of the Defendant who was in a management level position. Burton alleges that the Defendant's President, James Burns, stated in his presence that the Plaintiff was a "NAACP plant," Burton deposition p. 52, that he was not going to have any "blacks or jews" on the teller line, *Id.* at 85–86, and that the Plaintiff was black and, therefore, not worthy of a teller position. *Id.* at 97. Moreover, Burton alleges that when he asked Steve Day, the bank's cashier, if the Plaintiff could be temporarily utilized as a teller, Day replied, "Nope, can't take Valerie. You know she can't. Burns wouldn't allow a black person out there." *Id.* at 131. The Court believes this evidence to be sufficient to meet the Plaintiff's *prima facie* burden.[6] *See e.g.,*

---

6. The Defendant remarks in its memorandum in reply to the Plaintiff's response that "[i]t is quite frustrating that Burton's deposition testimony must be taken as true for summary judgment purposes." As an aside, it then attacks the

credibility of Burton. The Defendant's comments are for naught, however. It is well established that a court cannot weigh the credibility of a witness on a motion for summary judgment. *Davis v. Zahradnick,* 600 F.2d 458 (4th

*Young v. Lehman,* 748 F.2d 194 (4th Cir. 1984), *cert. denied,* 471 U.S. 1061, 105 S.Ct. 2126, 85 L.Ed.2d 489 (1985) (evidence detailing the activities of selection personnel was sufficient to establish a *prima facie* case of racial discrimination); *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1980) (*prima facie* burden may be met by showing that a qualified applicant "was rejected under circumstances which give rise to an inference of unlawful discrimination"). Of course, a defendant does not necessarily lose at the summary judgment stage by failing to show that the plaintiff has not established a *prima facie* case. It may proceed to the second stage of proof and articulate a legitimate business reason for the personnel action. Without rebuttal by the Plaintiff, the articulated reason would allow the Defendant to prevail. The Defendant has certainly articulated a legitimate business reason here. It claims that Lynn was hired instead of the Plaintiff because of Lynn's superior qualifications. Having articulated a legitimate reason, the burden then shifts back to the Plaintiff to prove that the explanation is a pretext.

 It must be emphasized that the Plaintiff, at this point, does not have to prove that the proffered reason is a pretext, she merely has to establish that there is a genuine issue of material fact as to the point. The Court believes that the Plaintiff has created such an issue with the "smoking gun" evidence detailed above.

 The Fourth Circuit seemed to indicate in *Young v. Lehman, supra,* that to defeat an articulated reason based upon qualifications, a plaintiff has to establish that she was better qualified than the other applicant. *Id.* at 198. On the other hand, in *Gairola v. Commonwealth of Virginia, Department of General Services, supra,* the court indicated that a plaintiff could attempt to color an articulated reason as pretextual by introducing direct evidence of discriminatory motive. Absent such direct evidence, a plaintiff would as a practical

matter have to show that she was better qualified than the successful applicant. But the Court does not believe that a plaintiff must always prove that a pretextual statement is false. Proof of falsity will of course be of great benefit to the Plaintiff, but the crucial inquiry is whether the proffered reason is the true reason the decision was made.

Related to the consideration of pretext is the Defendant's argument that a "but for" test should be applied to this factual situation. In other words, the Plaintiff, according to the Defendant, should have to show that "but for" any racial animus she would have been promoted. It insists that she cannot meet this test because of the evidence that Patricia Lynn was better qualified. Therefore, all things equal, the Plaintiff still would not have gotten the promotion over Lynn. This reasoning assumes, of course, that Lynn was selected on her superior qualifications. More broadly speaking, it assumes that all business decisions are rationally made. Title VII, however, is a manifestation of the realization that not all business decisions are rational—that those based on racial stereotypes are inherently irrational. The third step of the *McDonnell-Douglas* proof scheme, pretext, is a further realization that some explanations are the product of hindsight rather than a true barometer of what occurred at the time of decision. If the Plaintiff cannot disprove that the Defendant actually relied upon Lynn's qualifications in making its decision, then she will not prevail. In other words, the Plaintiff must prove that her race was a "but for" cause or determining factor for her failure to be promoted. *Jackson v. City of Killeen,* 654 F.2d 1181, 1186 (5th Cir.1981).

 The above discussion is reflective of the principle that "[t]he 'factual inquiry' in a Title VII case is '[whether] the defendant intentionally discriminated against the plaintiff.'" *United States Postal Service Board of Governors v. Aikens,* 460 U.S.

Cir.1979). Indeed, attacks on the credibility of an affiant have been held to create issues suit-

able for disposition only at trial. *Porter v. Califano,* 592 F.2d 770 (5th Cir.1979).

711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983) (quoting *Burdine, supra,* 450 U.S. at 253, 101 S.Ct. at 1093) (second brackets in *Aikens*). Proof of a discriminatory motive is thus critical in a disparate treatment case. *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977). Consistent with the emphasis on motive and intent, it has been held that "summary judgment is seldom appropriate in cases wherein particular states of mind are decisive as elements of [a] claim or defense." *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985) (quoting *Charbonnages de France v. Smith,* 597 F.2d 406, 414) (4th Cir.1979); *see also Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.1984). Despite its articulation of this principle, the *Meiri* court nevertheless found summary judgment to be appropriate. The plaintiff there, however, had made only "conclusory allegations of discrimination." *Id.* That is not the situation here.

■ The Plaintiff, perhaps in response to the Defendant's attack on the May 23, 1983, incident of alleged discrimination, has alleged that hers is a case of a continuing violation of Title VII. Because the Court has determined that genuine issues of material fact are extant as to the failure to promote claim, it need not, and does not, decide the question posed by the Plaintiff. It must be noted, however, that a mere conclusory allegation of a continuing violation is not sufficient to overcome the time and filing requirements of Title VII. *Patterson v. General Motors Corp.,* 631 F.2d 476, 484 (7th Cir.1980), *cert. denied,* 451 U.S. 914, 101 S.Ct. 1988, 68 L.Ed.2d 304 (1981). In this vein, the Fourth Circuit has stated that an allegation of a "continuing violation" does not constitute "a talismanic or shibboleth term automatically relieving a claimant of any obligation to comply with the statutory time requirement for the filing of a charge with the EEOC under Title VII." *Hill v. AT & T Technologies, Inc.,* 731 F.2d 175, 179–80 (4th Cir.1984).

■ These observations are relevant because if the Plaintiff fails to prove discrimination as to the May 23, 1983, act, and if she decides to pursue a continuing violation theory, she will have to show that a violation of Title VII occurred within the 180–day time period preceeding the filing of her administrative charge. *United Airlines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977); *Woodard v. Lehman,* 717 F.2d 909, 914–15 (4th Cir.1983). As the D.C.Circuit has held, to demonstrate a continuing violation, a plaintiff must show "a series of related acts, one or more of which falls within the limitations period, or the maintenance of a discriminatory system both before and during the [limitations] period." *Valentino v. United States Postal Service,* 674 F.2d 56, 65 (D.C.Cir.1982) (brackets in original) (quoting B. Schlei & P. Grossman, *Employment Discrimination Law,* 232 (Supp. 1979)). Finally, continuing efforts to obtain a promotion do not necessarily indicate a continuing violation. *Soble v. University of Maryland,* 572 F.Supp. 1509, 1516 (D.Md.1983).

### B. *Collateral Estoppel.*

■ The Defendant argues that the Plaintiff is collaterally estopped from relitigating the promotion and constructive discharge issues found in Counts I and II of her complaint. It bases this argument on the results of the Plaintiff's attempt to obtain unemployment compensation benefits after her separation from the Defendant's employ. The Defendant apparently opposed her application for benefits and a hearing was held before an administrative law judge. The Plaintiff presented for the ALJ's consideration, *inter alia,* several documents connected with her discrimination charge, a list of people promoted over her, and her resignation letter. The ALJ found in favor of the Plaintiff. Upon the Defendant's appeal, the board of review affirmed the ALJ's decision. The Defendant then appealed to the Circuit Court of Kanawha County which, "[a]fter a thorough review of the record," reversed the

administrative decision with the following finding:

> "On this record there was no 'fault on the part of the employer' as a result of managerial policy decisions [sic] on promotions and transfers."

Initially, the Defendant relied upon the case of *Stall v. Bourne*, 774 F.2d 657 (4th Cir.1985). The *Stall* court held that an employee who had litigated his denial of unemployment benefits was collaterally estopped from relitigation allegations of discharge based on political reasons. The *Stall* decision, however, has been withdrawn by an equally divided court after an *en banc* hearing. 783 F.2d 476 (4th Cir. 1986). The Plaintiff thus argues that the decision which controls the instant issue is *Ross v. Communications Satellite Corp.*, 759 F.2d 355 (4th Cir.1985).

In *Ross* the Fourth Circuit was confronted with a situation similar to that which transpired in *Stall*. The plaintiff in *Ross* claimed that he had been discharged as a result of sex discrimination and in retaliation for filing an administrative charge on the alleged discrimination. Upon application for unemployment benefits, however, the issues surrounding his discharge were resolved in favor of the employer. This determination was affirmed by a Maryland circuit court. In the plaintiff's Title VII action, the employer argued that the plaintiff was collaterally estopped from relitigating his discharge. The Fourth Circuit disagreed. It found that the highest court of Maryland would not give preclusive effect to the findings of that state's employment security agency. *See Cicala v. Disability Review Board for Prince George's County*, 288 Md. 254, 418 A.2d 205 (1980).

The Defendant, before the opinion was withdrawn by the Fourth Circuit, argued that *Stall* was authority which this Court was obligated to follow. The Plaintiff, on the other hand, contends that *Ross* is binding on the Court. Actually, as the Defendant now acknowledges, neither decision is binding in the sense that a similar result must be reached here. Both decisions, however, were controlled by the same principle: federal courts are required to give preclusive effect to state court judgments where the state courts themselves would do so. *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). In *Stall* the applicable law was that of South Carolina; in *Ross*, Maryland law supplied the rule of decision. Hence, in the case at bar, West Virginia law controls.

The Defendant naturally argues that West Virginia law would give preclusive effect to the circuit court decision which reversed the holding of the administrative agencies. The Defendant cites *Conley v. Spillers*, 301 S.E.2d 216 (W.Va.1983) to support its position. The Defendant, however, does not discuss *Conley* or explain why that decision controls. The *Conley* court was not asked to decide the issue before the Court today. It did not address at all the preclusive effect to be given an administrative decision. Rather, in *Conley* the West Virginia court discussed the use of collateral estoppel in the context of two judicial actions. Although it did review some general concepts related to the doctrine of collateral estoppel, the *Conley* court announced no principles which control the question currently before the Court.

Lacking express guidance on the point, the Court must predict how the West Virginia court would rule on this issue. *Hatfield v. Palles*, 537 F.2d 1245 (4th Cir.1976). Having considered the reasoning of the Court of Appeals of Maryland in *Cicala, supra*, and of the Fourth Circuit in *Ross*, the Court believes those cases to supply the route which would be taken by the West Virginia Supreme Court.

In *Cicala*, the Maryland court held that principles of *res judicata* did not bar relitigation of seemingly identical issues when the cause of actions arose under separate statutes containing substantial differences. The *Cicala* court was concerned with whether a determination under the states workmen's compensation laws barred relitigation of the same issue, whether an injury was work related, in a subsequent pro-

ceeding under a police pension plan. The Fourth Circuit, in *Ross*, applying Maryland law, was confronted with statutes similar to those implicated by the instant action: employment security and Title VII.

The *Ross* court found substantial differences to exist between Maryland's unemployment compensation laws and Title VII. It, therefore, refused to collaterally estop an employee from relitigating the issues surrounding his discharge despite the employee having received an adverse determination on those issues in a hearing relating to unemployment benefits. The Court noted that the two statutes had unrelated purposes and different enforcement mechanisms. Especially persuasive to this Court is the Fourth Circuit's observation that while a state employment "administrative adjudicator is concerned with forbidden conduct on the part of the employee, Title VII directs the fact finder's attention to a forbidden motive on the part of the employer." *Ross*, 759 F.2d at 362.

The Defendant in *Ross* attempted to distinguish *Cicala* by pointing out that the administrative decision at issue in *Ross* had been judicially affirmed. The Fourth Circuit declined to accept that fact as one sufficient to warrant distinction. The crucial inquiry is whether the statutes involved had different purposes and standards. An appeal from the administrative decision did not change the result. By the same token, the fact that the decision sought to be employed by the Defendant here is a judicial reversal of an administrative ruling has no bearing on the conclusion that issue preclusion would be inappropriate.

The Court emphasizes that this holding is based on its forecast of the course which the West Virginia court would follow. Although Maryland law has provided a helpful analogy, the controlling law is that of West Virginia. This Court's reading of the West Virginia court's recent cases in the area of employment discrimination convinces it that the West Virginia court would adopt or follow the progressive reasoning of the Maryland court, as recently applied

by the Fourth Circuit. The Court thus concludes that the Plaintiff is not collaterally estopped from litigating her promotion and constructive discharge issues.

### C. *Common Law, Tort-Based Action.*

 Count II of the Plaintiff's complaint sounds in tort. It is a common law action which in West Virginia has come to be known as a *Harless*-type action. *Harless v. First National Bank in Fairmont*, 246 S.E.2d 270 (1978). In essence, the Plaintiff claims that the Defendant, in allegedly retaliating against the Plaintiff, violated a substantial public policy of West Virginia—the right of an employee to complain of discriminatory treatment. The Defendant argues that any common law action is preempted by the West Virginia Human Rights Act and Title VII, that is, that the Plaintiff is limited to the statutory remedy provided by those two statutes. The Defendant's argument is well taken. This Court has previously decided that a party may not bring a *Harless*-type, tort-based action to gain redress for violations of the West Virginia Human Rights Act. *Guevara v. K–Mart Corp.*, 629 F.Supp. 1189 (S.D.W.Va.1986).

Count II of the Plaintiff's amended complaint is derived from allegations of retaliation contained in Counts I and II of the original complaint. After the Defendant argued that the retaliation theory was procedurally barred for lack of an administrative charge, the Plaintiff restructured her complaint to include the *Harless*-type action.

 The Plaintiff now appears to rest all of her claims of retaliation on the viability of her *Harless*-type action. Nevertheless, insofar as the Plaintiff would still seek to litigate under the statute her constructive discharge or other alleged acts of retaliation occurring after the filing of her administrative charge, she is precluded. As the Defendant points out, the Plaintiff did not file administrative charges as to those claims. The scope of the action can not be broader than the administrative charge. *Miller v. Walker Division of But-*

*ler Mfg. Co.*, 577 F.Supp. 948 (S.D.W.Va. 1984). To hold otherwise would be to undermine the purpose of requiring administrative involvement: conciliation prior to litigation.

### D. *West Virginia Human Rights Act.*

█ In Count III of the amended complaint, the Plaintiff alleges that the Defendant violated the West Virginia Human Rights Act by failing to promote her and for retaliating against her for asserting her rights. The Defendant contends that this Count is barred because the Plaintiff did not act upon a right to sue notice issued by the Human Rights Commission.

Having received the Plaintiff's administrative charge on June 22, 1983, the Human Rights Commission issued the Plaintiff a right to sue notice on July 2, 1984. Said notice gave the Plaintiff ninety days to initiate a suit under the Act. Having failed to do so, she is now barred from asserting those claims. *See W.Va.Code*, § 5–11–13(b).

The Plaintiff argues that hers is a "direct action" outside of the procedural constraints of the Act. It is true that the West Virginia Supreme Court has held that a party may bypass the administrative mechanism and directly prosecute her claim in court. *Price v. Boone Ambulance Authority*, 337 S.E.2d 913, 915 (W.Va.1985). The *Price* court, however, cautioned that such an action was only available when the administrative option had not been invoked. Once invoked the administrative route is exclusive. Thus, having initiated an administrative action, the Plaintiff may not now prosecute a direct action.

### E. *Punitive Damages and Jury Trial.*

█ In her amended complaint the Plaintiff demands a trial by jury and punitive damages. In light of the rulings announced above, this case is now limited to theories under Title VII. It is well settled that a Title VII litigant is not entitled to either a jury trial, *Great American Federal Savings & Loan Association v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979), or an award of punitive damages, *Walker v. Ford Motor Company*, 684 F.2d 1355 (11th Cir.1982); *Jeter v. Boswell*, 554 F.Supp. 946 (N.D.W.Va.1983). The clarity of these decisions makes further amplification unnecessary. The motion of the Defendant to strike the Plaintiff's demands for a jury trial and punitive damages is well taken and the same are hereby ORDERED stricken.

### III. *Conclusion*

In accordance with the above discussion, the Court ORDERS as follows:

1. That the Plaintiff may go forward with her "failure to promote" claim;

2. That the Plaintiff is not subject to collateral estoppel on the failure to promote issue;

3. That the Plaintiff's *Harless*-type action is preempted by Title VII and the West Virginia Human Rights Act;

4. That the Plaintiff's claims based upon retaliation and her constructive discharge claim are barred for failure to file an administrative charge;

5. That the count based on the West Virginia Human Rights Act is untimely; and

6. That the Plaintiff's demands for a jury trial and punitive damages shall be stricken.

The Clerk is directed to send a certified copy of this Memorandum Opinion and Order to counsel of record.