451 S.E.2d 773

**Charles P. WILFONG, Plaintiff Below, Respondent,**

v.

**CHENOWETH FORD, INC., Defendant Below, Petitioner.**

**No. 22362.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 28, 1994.

Decided Nov. 18, 1994.

---

8. *See* W.Va.Code §§ 16–2–1 to –7, 16–2A–1 to –9.

Brent E. Beveridge, Fairmont, for respondent.

Karen H. Miller, Charleston, for petitioner.

WORKMAN, Justice:

This case arises upon certified questions from the Circuit Court of Harrison County and concerns the issue of whether the exclusivity provision of the West Virginia Human Rights Act (the "Act"), West Virginia Code §§ 5–11–1 to –19 (1994 and Supp.1994), found in West Virginia Code § 5–11–13(a), prohibits the institution of an action under the Act if the same issues have previously been addressed through administrative proceedings of the Equal Employment Opportunity Commission ("EEOC"). The additional question is raised as to whether the statute of limitations that is referenced within the Act in West Virginia Code § 5–11–13(b) is a 180–day period or a 2–year period. Having examined these issues in full, we respond to the first certified question in the negative and respond to the second certified question by concluding that the limitations period referred to is a two-year period.

Petitioner Chenoweth Ford ("Chenoweth") is the defendant in a pending age discrimination action filed in the Circuit Court of Harrison County ("circuit court") by Respondent Charles P. Wilfong, a former Chenoweth employee. After being fired on February 14, 1992, Respondent filed an age discrimination complaint with the EEOC. By decision dated June 30, 1993, the EEOC found no reasonable cause to believe disparate treatment had occurred with regard to Respondent's firing.[1] In conjunction with the no reasonable cause ruling, Respondent was notified by the EEOC that he had 90 days in which to file suit in federal court based on his age discrimination claim. That period expired on September 30, 1993, without Respondent having filed a federal action.

On December 6, 1993, Respondent filed a civil action in the circuit court alleging a violation of the Act based on age discrimination. By order dated March 21, 1994, the circuit court certified the following questions to this Court:

1. Does the exclusivity provision set out in W.Va.Code § 5–11–13(a) prohibit an action under the West Virginia Human Rights Act if the matter has previously been addressed through administrative proceedings of the Equal Employment Opportunity Commission, a determination letter finding no reasonable cause has been issued, and the claimant has failed to bring an action in federal court pursuant to a ninety (90) day right-to-sue letter?

2. Does the statute of limitations discussed at W.Va.Code § 5–11–13(b) refer to the one hundred eighty (180) days statute of limitations created by W.Va.Code § 5–11–10?

3. Does the statute of limitations discussed at W.Va.Code § 5–11–13(b) refer to the two (2) year statute of limitations set forth at W.Va.Code § 55–2–12?

The circuit court responded to the questions by answering the first and second questions in the affirmative and the third question in the negative.

I.

The language at issue which presents the exclusivity issue is found in West Virginia Code § 5–11–13(a):

Except as provided in subsection (b), nothing contained in this article shall be deemed to repeal or supersede any of the provisions of any existing or hereafter adopted municipal ordinance, municipal charter or of any law of this state relating

---

1. The EEOC, in its determination, states:
   A review of the evidence indicates that Charging Party and a 38 year old were terminated at the same time, ... and that neither of them were replaced. Compared to the only similarly situated younger employee who was retained, Charging Party started work later and left early more often, he was slower in doing appraisals, he also refused to so some work requested of him, while his comparison did not, and he had some interpersonal skills problems with subordinates that his comparison did not.

to discrimination ... but as to acts declared unlawful by section nine [§ 5–11–9] of this article the procedure herein provided shall, when invoked, be exclusive and the final determination therein shall exclude any other action, civil or criminal, based on the same grievance of the complainant concerned. If such complainant institutes any action based on such grievance without resorting to the procedure provided in this article, he may not subsequently resort to the procedure herein....

*Id.* (emphasis supplied). Relying on the underscored statutory language, Petitioner argues that Respondent is barred from maintaining an action under the Act because of his prior proceedings before the EEOC.

Petitioner contends that the decision of the United States Supreme Court in *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), is dispositive of the exclusivity issue raised in this case. In *Kremer,* the Supreme Court ruled that a discrimination claimant could not sue in federal court under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e to 2000e–17 (West 1981 ed. and Supp.1994) on charges identical to those already addressed in state court under the New York Human Rights Act. 456 U.S. at 485, 102 S.Ct. at 1899. To buttress its position, Petitioner cites the following language from *Kremer:*

> Although the claims presented to the NYHRD and subsequently reviewed by the Appellate Division were necessarily based on New York law, the alleged discriminatory acts are prohibited by both federal and state laws. The elements of a successful employment discrimination claim are virtually identical; petitioner could not succeed on a Title VII claim consistently with the judgment of the NYHRD that there is no reason to believe he was terminated or not rehired because of age or religion.

*Id.* at 479–80, 102 S.Ct. at 1896 (footnote omitted). In addition, Petitioner references legislative history of Title VII, quoted favorably in *Kremer,* concerning whether Congress intended for Title VII to repeal the requirement that federal courts give full faith and credit to state court judgments: " '[I] do not believe that the individual claimant should be allowed to litigate his claim to completion in one forum, and then if dissatisfied, go to another forum to try again.' " 456 U.S. at 476, 102 S.Ct. at 1907 (quoting 118 Cong.Rec. S3372) (1972) (statement of Sen. Williams).

Petitioner's position is essentially that once a proceeding is initiated before the EEOC, that administrative mechanism becomes the exclusive procedure for prosecuting a discrimination claim. Conversely, Respondent maintains that because there has never been a decision on the merits of his claim, the doctrines of res judicata and collateral estoppel are not applicable. He distinguishes the *Kremer* decision by arguing that, whereas the action of the New York Human Rights Division is the equivalent of a judicial undertaking with all the attendant levels including judicial review, EEOC proceedings constitute nothing more than a mere investigation.

■ This Court has previously determined that "the doctrine of *res judicata* may be applied to quasi-judicial determinations of administrative agencies." *Rowan v. McKnight,* 184 W.Va. 763, 764, 403 S.E.2d 780, 781 (citing *Liller v. West Virginia Human Rights Comm'n,* 180 W.Va. 433, 376 S.E.2d 639 (1988)). Before a preclusive effect will be given to an administrative decision, however:

> 'An assessment of three factors is ordinarily made in determining whether res judicata and collateral estoppel may be applied to a hearing body: (1) whether the body acts in a judicial capacity; (2) whether the parties were afforded a full and fair opportunity to litigate the matters in dispute; (3) whether applying the doctrines is consistent with the express or implied policy in the legislation which created the body.'

Syl. Pt. 2, *Jones v. Glenville State College,* 189 W.Va. 546, 548, 433 S.E.2d 49, 51 (1993) (quoting Syl. Pt. 3, *Mellon–Stuart Co. v. Hall,* 178 W.Va. 291, 359 S.E.2d 124 (1987)).

■ In *Jones,* we addressed the analogous issue of whether the issuance of a "no probable cause" determination by the West Virgi-

nia Human Rights Commission ("HRC") constituted an adjudication on the merits which would preclude a complainant from instituting suit in state court on grounds of res judicata. After considering the limited nature of a proceeding before the HRC, we held: "While the doctrine of res judicata is applicable to the final determinations made by the West Virginia Human Rights Commission after conducting a public hearing on the merits of a discrimination complaint, it is not applicable to a 'no probable cause' determination rendered by the Human Rights Commission." Syl. Pt. 3, *Jones v. Glenville State College*, 189 W.Va. at 548, 433 S.E.2d at 51 (1993).

Our holding in *Jones* was premised on the rationale that when the final ruling from an administrative body is a no probable cause letter, "the HRC has only acted as an investigatory body, not a judicial body, in ascertaining whether probable cause existed to support the allegations in the complaint." 189 W.Va. at 553, 433 S.E.2d at 56. "Consequently, the parties are not afforded any full and fair opportunity to litigate the matters in dispute at the probable cause determination stage." *Id.* Moreover, we recognized in *Jones* that "it is without question that the doctrine of res judicata would apply to the HRC decisions if a public hearing and final determination on the merits had occurred." *Id.*

■ As we announced in *Liller*, "[t]he underlying purpose of both doctrines [res judicata and collateral estoppel] is to prevent relitigation of matters about which the parties have had a full and fair opportunity to litigate *and which were in fact litigated.*" 180 W.Va. at 440, 376 S.E.2d at 646 (emphasis supplied). The significant factor which prevents a "no probable cause" determination issued by the HRC or a "no reasonable cause" determination issued by the EEOC from having a preclusive effect on subsequent actions is the lack of a final determination on the merits involving actual litigation, rather than just mere investigation.

The *Kremer* decision, upon examination, does not stand for the proposition which Petitioner suggests. The issue in *Kremer* was whether the full faith and credit requirement imposed by 28 U.S.C.A. § 1738 (1994)[2] required it to give preclusive effect to the state court decision upholding the NYHRD's rejection of an employment discrimination claim. In analyzing this issue, the Supreme Court scrutinized whether the administrative procedures which New York afforded a discrimination complainant met the constitutional requirements of due process and found that

> Under New York law, a claim of employment discrimination requires the NYHRD to investigate whether there is 'probable cause' to believe that the complaint is true. Before this determination of probable cause is made, the claimant is entitled to a 'full opportunity to present on the record, though informally, his charges against his employer or other respondent, including the right to submit all exhibits which he wishes to present and testimony of witnesses in addition to his own testimony.' ... The complainant also is entitled to an opportunity 'to rebut evidence submitted by or obtained from the respondent.' ... He may have an attorney assist him and may ask the division to issue subpoenas....

> ... A public hearing must also be held if the Human Rights Appeal Board finds 'there has not been a full investigation and opportunity for the complainant to present his contentions and evidence, with a full record.' ... Finally, judicial review in the Appellate Division is available to assure that a claimant is not denied any of the procedural rights to which he was entitled and that the NYHRD's determination was not arbitrary and capricious.

456 U.S. at 483–84, 102 S.Ct. at 1899 (citations omitted). After reviewing these procedures, the Supreme Court concluded in *Kremer*,

---

**2.** 28 U.S.C.A. § 1738 provides, in pertinent part, that: "[t]he records and judicial proceedings of any court of any such State ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State...."

We have no hesitation in concluding that this panoply of procedures, complemented by administrative as well as judicial review, is sufficient under the Due Process Clause. Only where the evidence submitted by the claimant fails, as a matter of law, to reveal any merit to the complaint may the NYHRD make a determination of no probable cause without holding a hearing.... And before that determination may be reached, New York requires the NYHRD to make a full investigation, wherein the complainant has full opportunity to present his evidence, under oath if he so requests.

*Id.* at 484–85, 102 S.Ct. at 1899 (citations omitted).

■ In contrast to the numerous protections afforded a discrimination complainant under New York law, a proceeding before the EEOC differs significantly. A complainant is not afforded the automatic right to testify under oath and only testifies if he is summoned by the EEOC. Moreover and critically, there is no procedure for either administrative or judicial review following the issuance of a "no reasonable cause" finding. *See* 29 C.F.R. § 1601.15 to .21 (1993). Accordingly, whereas the procedures followed by New York constitute the equivalent of a judicial undertaking, the proceedings before the EEOC are solely investigatory in nature.

Petitioner cites the decision of the Southern District of West Virginia in *Taylor v. City National Bank*, 642 F.Supp. 989 (S.D.W.Va.1986), as controlling the outcome of this case. In that case, the complainant was held to be barred from instituting a civil action in state court under the Act because she had first initiated her race discrimination complaint before the HRC, and when awarded a "right to sue" letter, failed to proceed. *Id.* at 999. Initially, we note that *Taylor* is distinguishable from the case *sub judice* for several reasons. The *Taylor* case did not involve an apposite factual situation where the complainant first proceeded under a federal discrimination act and then attempted to institute proceedings in our state system. More importantly, however, is the *Taylor* Court's reliance on *Price v. Boone County Ambulance Authority*, 175 W.Va. 676, 337 S.E.2d 913 (1985), in which we addressed the mutual exclusivity of proceeding either before the HRC or filing an action under the Act in circuit court. *See* 175 W.Va. at 679, 337 S.E.2d at 916; W.Va.Code § 5–11–13(a). Thus, *Taylor* does not stand for the proposition suggested by Petitioner—that initiating a proceeding before the EEOC, no matter what the outcome, will bar a subsequent proceeding in circuit court under the Act. Instead, *Taylor* merely recognized and followed our prior ruling in *Price*. *See* 642 F.Supp. at 999. Moreover, *Taylor* does not resolve the issue of the preclusiveness of an EEOC "no probable cause" determination since that issue was not addressed in *Taylor*.

■ The actions of an administrative body can only be considered to be the equivalent of judicial action and therefore subject to the doctrines of res judicata and collateral estoppel where the adverse parties actually fully and fairly litigated the issue and a decision on the merits was issued. By its very nature, an EEOC "no probable cause" finding lacks the requisite adjudicatory procedures necessary to invoke doctrines of preclusion. Since the issuance of a "no reasonable cause" finding by the Equal Employment Opportunity Commission is not the equivalent of an adjudication on the merits, such a finding does not bar the institution of a cause of action under the Act in state court.

## II.

■ The statute of limitations issue presented concerns the language of West Virginia Code § 5–11–13(b):

Notwithstanding the provisions of subsection (a) of this section, a complainant may institute an action against a respondent in the county wherein the respondent resides or transacts business at any time within ninety days after the complainant is given notice of a right to sue pursuant to this subsection (b), <u>or, if the statute of limitations on the claim has not expired at the end of such ninety-day period, then at any time during which such statute of limitations has not expired.</u>

*Id.* (emphasis supplied). Petitioner argues that the underscored language refers to the 180–day period established by the Act for filing claims. *See* W.Va.Code § 5–11–10.

We reject Petitioner's contention as we have recognized in *McCourt v. Oneida Coal Co., Inc.,* 188 W.Va. 647, 425 S.E.2d 602, (1992), that the statute of limitation for initiating a discrimination complaint under the Act in circuit court is two years. *Id.* at 651, 425 S.E.2d at 606. Since a person who chooses to file a discrimination complaint pursuant to the Act in circuit court has a two year period in which to file suit, it would be preposterous for this Court to rule that just because that individual initially filed a complaint with the EEOC, she no longer can avail herself of this two-year limitations period. Accordingly, we hold that the statute of limitations referred to in West Virginia Code § 5–11–13(b) is a 2–year period of limitations rather than a 180–day period.

Having responded to the certified questions, this case is dismissed from the docket of this Court.

Certified questions answered; case dismissed.

BROTHERTON, C.J., did not participate.

MILLER, Retired Justice, sitting by temporary assignment.