# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Rebecca White,**
**Petitioner**

**vs) No. 15-0521** (Fayette County 14-C-218)

**Erie Insurance Property and Casualty Company,**
**Respondent**

**FILED**

**June 3, 2016**

**released at 3:00 p.m.**
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Rebecca White, by counsel Lonnie C. Simmons, appeals the order of the Circuit Court of Fayette County, entered on April 27, 2015, granting summary judgment in favor of Respondent Erie Insurance Property and Casualty Company ("Erie") and concluding that the insurance policy at issue does not provide coverage for Ms. White. Erie, by counsel Laurie C. Barbe, Amy M. Smith, and Katherine M. Mullins, filed a response.

This Court has considered the parties' briefs, their oral arguments, and the record on appeal. Upon consideration of the standard of review, the briefs, oral argument, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

At the time of the events giving rise to this case, Ms. White was a twenty-three-year-old unmarried, unemancipated student, living with her mother, Ann Brennan, in Texas. Ms. White's father, Jerry White, divorced Ms. Brennan more than fifteen years ago, and he has lived in West Virginia since 2008.

On May 19, 2013, Ms. White was involved in a motorcycle accident in Texas. She was a guest passenger on a motorcycle operated by Alexander Polanco-Lopez. A motor vehicle operated by Kristina Elena Gonzalez struck the motorcycle in the rear, and Ms. White sustained severe bodily injuries as a result.

Ms. White recovered the available insurance policy limits from the carrier providing coverage for the vehicle operated by Ms. Gonzalez. There was no available automobile insurance coverage in effect providing coverage for Mr. Polanco-Lopez or the

1

motorcycle operated by him. Ms. White filed a claim under Jerry White's insurance for underinsured motorist ("UIM") coverage.

Mr. White had purchased a Family Auto Insurance Policy from Erie which was effective August 1, 2012 through August 1, 2013. The policy provided UIM bodily injury coverage in the amount of $100,000 per person, $300,000 per accident, and UIM property damage coverage in the amount of $10,000 per accident. The policy provided UIM coverage as follows:

> "[W]e" will pay damages for bodily injury and property damage that the law entitles "anyone we protect" . . . from the owner or operator of an "underinsured motor vehicle."
> Damages must result from a motor vehicle accident . . . and involve:
> 1. bodily injury to "anyone we protect." Bodily injury means physical harm, sickness disease or resultant death to a person.

(Emphasis omitted). The policy defines "anyone we protect" as "'you'[1] or any 'relative.'" (Emphasis omitted) (footnote added). The policy further provides, "'Relative' means a "resident of 'your' household who is a . . . [p]erson related to 'you' by blood, marriage or adoption." (Emphasis omitted). "'Resident' means a person who physically lives with 'you' in 'your' household on a regular basis. 'Your' unmarried, unemancipated children attending school full time, living away from home, will be considered 'residents' of 'your' household." (Emphasis omitted).

Erie denied Ms. White's claim. Erie also filed a Complaint for Declaratory Relief against Ms. White and Mr. White seeking a declaratory judgment regarding the existence or nonexistence of coverage for Rebecca White's claim under Mr. White's policy. With her answer to the complaint, Ms. White filed a counterclaim against Erie seeking a declaration that the UIM provision in Mr. White's policy does provide coverage for her injuries.

Mr. White was subsequently dismissed from the action in an Amended Consent Judgment and Partial Dismissal Order entered on October 17, 2014.[2] According to the order,

---

[1] The policy indicates that "you" and "your" both refer to the person listed on the declarations page of the policy. Here, the only person listed on the declarations page is Jerry White.

[2] The circuit court entered a Consent Judgment and Partial Dismissal Order on September 12, 2014, but the parties disputed language regarding coverage, prompting the court to enter an amended order.

Defendant Jerry L. White acknowledges that his daughter, Defendant Rebecca White, lives with her mother and is a resident of Dripping Springs, Texas. Mr. White further acknowledges that although Ms. White was attending college at the time of the accident, she had not visited him for at least a year and had no clothing or personal items at his home in Smithers, West Virginia. Thus, Mr. White concedes that his daughter, Rebecca White, is not a resident of his household, as defined by the Erie Policy. Additionally, Mr. White acknowledges that when he purchased the Erie Policy, it was not his intent that Rebecca White be covered under it.

The parties submitted a Stipulation of Facts dated February 23, 2015, to the circuit court. In the Stipulation of Facts, the parties agreed that while "Rebecca White visited Jerry White in West Virginia," "Jerry White's home and residence in West Virginia was never Rebecca White's home." Further, they agreed that "[a]t the time of the accident, Rebecca White was an unmarried, unemancipated child of Jerry White, who was attending school in Texas" and that Ms. White "did not identify Jerry L. White's address as her own for school records."

Only days after filing the Stipulation of Facts, Erie filed a motion for summary judgment. In response, Ms. White filed a cross motion for summary judgment. She attached to her motion, among other things, a notarized letter dated February 25, 2015, submitted by her mother, Ms. Brennan. In the letter, Ms. Brennan wrote:

Rebecca visited Jerry each Christmas after he moved to West Virginia. He paid for [her] plane tickets each year. [She] enjoyed visiting him because [she] also [got] to see his mother ([her] grandmother), and his brother and brother's kids. It's a family visit with Jerry's family. [Her] last Christmas visit with him was Christmas 2012.

Aside from Christmas visits, the letter does not allege any other instances of Ms. White visiting with Mr. White in West Virginia.

By order dated April 27, 2015, the circuit court granted Erie's motion for summary judgment, determining that there were no genuine issues of material fact with respect to Erie's summary judgment motion. The court concluded:

Rebecca White does not satisfy the clear and unambiguous definition of "anyone we protect" as that term is defined by the Erie Policy. While Ms. White is Jerry White's adopted daughter, Ms. White was not a resident of Jerry White's household on May 19, 2013. Furthermore, *Ms. White did not and does not physically live in Jerry White's home on any basis, let alone on a regular basis.*

3

. . . Applying the undisputed facts to the clear and unambiguous terms of the Family Auto Insurance Policy purchased by Jerry L. White from Erie, policy number Q08 5111202 W, effective August 1, 2012, through August 1, 2013, the [c]ourt concludes that said policy of insurance does not provide underinsured motorist coverage for bodily injuries sustained by Rebecca White in the May 19, 2013 motorcycle accident.

(Emphasis added).

Ms. White now appeals the circuit court's decision to this Court, arguing in her sole assignment of error that as a child of divorced parents, she should be considered as living with both parents, which she contends "is consistent with contemporary realities of family living." This Court reviews a circuit court's entry of summary judgment de novo. Syl. pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). Pursuant to Rule 56(c) of the *West Virginia Rules of Civil Procedure*, a motion for summary judgment may only be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See also* syl. pt. 2, *Painter*, 192 W. Va. 189, 451 S.E.2d 775 ("""A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963).' Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992).").

Whether Ms. White is covered by Mr. White's policy turns on whether she is a "resident" within the meaning of the policy. As we observed above, the policy defines a resident as "a person who physically lives with 'you' in 'your' household on a regular basis. 'Your' unmarried, unemancipated children attending school full time, living away from home, will be considered 'residents' of 'your' household." (Emphasis omitted). Ms. White's first argument is that, at the time of her accident, she "live[d] with" Mr. White and that therefore, she should be covered by his Erie policy. Erie disagrees, asserting that "lives with" in the policy is not ambiguous language and that Ms. White did not live with Mr. White.

We have held that "[l]anguage in an insurance policy should be given its plain, ordinary meaning." Syl. pt. 1, *Mylan Labs. Inc. v. Am. Motorists Ins. Co.*, 226 W. Va. 307, 700 S.E.2d 518 (2010) (quoting syl. pt. 1, *Soliva v. Shand, Morahan & Co., Inc.*, 176 W. Va. 430, 345 S.E.2d 33 (1986), *overruled, in part, on other grounds by Nat'l Mut. Ins. Co. v. McMahon & Sons*, 177 W. Va. 734, 356 S.E.2d 488 (1987)). "Where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning

intended." Syl., *Keffer v. Prudential Ins. Co. of Am.*, 153 W. Va. 813, 172 S.E.2d 714 (1970).

We agree with Erie and determine that the phrase "lives with" is unambiguous. *See*, *e.g.*, *State Farm Mutual Auto Ins. Co. v. Quinn*, 62 Fed. Appx. 425, 430 (3d Cir. 2003) (determining that "lives with" in an insurance policy was unambiguous); *Stoner v. State Farm Mut. Auto. Ins. Co.*, 780 F.2d 1414, 1417 (8th Cir. 1986) ("[T]he phrase 'lives with you' is susceptible of only one interpretation, i.e., actually living in fact . . . ."); *Tokley v. State Farm Ins. Cos.*, 782 F. Supp. 1375, 1378 (D.S.D. 1992) ("[T]he State Farm policy language ['lives with'] is not ambiguous . . . ."); *Coley v. State Farm Mut. Auto. Ins. Co.*, 534 N.E.2d 220, 222 (Ill. Ct. App. 1989) (deciding that a policy containing the term "live with" does not present "ambiguity which would require us to construe the contract against defendant or go behind the contract to consider its underlying purpose."); *Moller v. State Farm Mut. Auto. Ins. Co.*, 566 N.W.2d 382, 386 (Neb. 1997) ("[W]e also find as a matter of law that the phrase ['lives with'] is not ambiguous."); *State Farm Mut. Auto. Ins. Co. v. Ruiz*, 952 P.2d 157, 161 (Wash. 1998) ("[T]he term 'lives with' unambiguously means 'living or dwelling in fact on a permanent or temporary basis.'"); *but see Davis v. State Farm Mut. Auto. Ins. Co.*, 583 So. 2d 225, 230 (Ala. 1991) ("[W]e hold that the term 'live with,' as used in the policy in question, is an 'ambiguous, elastic, or relative term, and includes a very temporary, as well as a permanent, abode.'"); *Casolari v. Pipkins*, 624 N.E.2d 429, 431 (Ill. App. Ct. 1993) ("The term 'lives with' in the definition of relative as used in the State Farm policy is ambiguous.").

Under its plain and ordinary meaning, "lives with" is a broad and elastic term. *Ruiz*, 952 P.2d at 162. We agree with Ms. White and the *Tokley* court that the phrase "should reflect the contemporary realities of family living and should not be narrow and strait-jacketed to apply only to idealized notions of a pristine family unit, harmonious and integrated." *Tokley*, 782 F. Supp. at 1379. However, "the concept of living with someone contemplates, at a minimum, some consistent, personal contact with that person's home. Occasional, sporadic, and temporary contacts are insufficient." *St. Paul Fire & Marine Ins. Co. v. Lewis*, 935 F.2d 1428, 1431–32 (3d Cir. 1991); *see also Rainey v. State Farm Mut. Auto. Ins. Co.*, 458 S.E.2d 411, 413 (Ga. Ct. App. 1995) ("More than mere physical presence and transient visitation is required to make a person a resident of a household."). While "lives with" is an expansive phrase, "[t]here may be instances, for example, where a person's stay with an insured relative is so brief and transitory that . . . it cannot be said that the person was in fact dwelling or living with the relative." *Ruiz*, 952 P.2d at 162.

The record before the Court shows that at the time of Ms. White's accident, she was the adult daughter of the insured; that she lived with her mother in Texas while attending school in Texas; that she kept no clothing or personal items at her father's home; that she did not list her father's home as her address in her school records; and that her only visits to her father's home since he moved to West Virginia in 2008 occurred, at

most, once a year for Christmas. Under the specific facts of this case, we determine that Ms. White's visits to her father's home were so transitory as to preclude her from "living with" him within the meaning of the policy language.

Ms. White also contends that she is covered under the policy as an unmarried, unemancipated child attending school full time and living away from home. The Stipulation of Facts included in the parties' Joint Appendix establishes that Ms. White was living with her mother at the time of the accident, and that "Jerry White's home and residence in West Virginia was never Rebecca White's home." Thus, Ms. White was not "living away from home"—either her mother's home or her father's home—within the meaning of the policy language.

We conclude that Ms. White is not a resident under Mr. White's policy because she neither lived with Mr. White nor was she living away from home when the accident occurred. Accordingly, Ms. White cannot be considered "anyone we protect" under the policy. For the foregoing reasons, we agree with the circuit court's conclusion that Mr. White's policy does not provide UIM coverage for the injuries Ms. White sustained in the May 19, 2013, motorcycle accident, and we affirm the court's April 27, 2015, order.

Affirmed.

**ISSUED:** June 3, 2016

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II